UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JESSICA JIMENEZ, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:16-cv-01377-WWE |
| | : | |
| CHUBB & SON, a division of | : | |
| FEDERAL INSURANCE COMPANY; | : | |
| and KELLY SERVICES, INC., | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jessica Jimenez alleges pregnancy discrimination and retaliation in violation of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"), and interference and retaliation under the Family and Medical Leave Act ("FMLA"). Defendant Chubb & Son has moved for summary judgment on all counts against it. For the following reasons, defendant's motion will be granted in part and denied in part.

### BACKGROUND

Chubb is a property and casualty insurance company with an office in Simsbury, Connecticut. Chubb contracted with the Kelly Services staffing company to fill Deductible Tracking Unit ("DTU") Analyst positions at Chubb's Simsbury office. Kelly Services assigned Kerry Bailey, a Vendor Management Specialist, to manage its staffing business with Chubb.

Kelley Services assigned plaintiff to be a DTU Analyst at Chubb in April 2012. As a DTU Analyst, plaintiff received and reviewed invoices from law firms and processed documentation relating to insurance policies. Accuracy was a key function of the job.

1

Plaintiff's work at Chubb was managed by Helen Yang, a Deductible Tracking Supervisor. Yang was in turn supervised by Senior Deductible Tracking Supervisor, Nicole Rankin.

Plaintiff was counseled in January 2014 and January 2015 about tardiness, attendance, and work-accuracy. In one instance, plaintiff processed the same invoice twice, resulting in a $9,000 overpayment, but failed to correct the error without having to be reminded by Yang. In another, plaintiff failed to properly bill an insured, which required a request for reimbursement to correct the error.

In March 2015, plaintiff submitted a request for pregnancy leave pursuant to the FMLA. The request was approved. In May 2015, Chubb decided to deny plaintiff a raise in pay.

Plaintiff's leave began on June 15, 2015, with an expected end date of September 21, 2015.

Rankin communicated a list of performance concerns to Bailey by email dated September 9, 2015. Plaintiff contends that, by that time, the vacancy created by her pregnancy leave had been filled, so plaintiff had already been replaced. It was not until September 2015 that plaintiff contacted Kelly Services about returning to work at Chubb in her role as a DTU Analyst.

Plaintiff maintains that she never received advanced warning of her termination and that she was never threatened with termination during various counseling sessions. Plaintiff asserts that her work mistakes never led to additional or special training. Moreover, she defends many of the absences on her record as being due to her pregnancy. Finally, although Chubb directly supervised and controlled plaintiff's day-to-day work assignments, plaintiff

2

contends that no Chubb employee *ever* informed plaintiff that Chubb decided to end plaintiff's employment because of performance deficiencies. Instead, plaintiff was informed by email that Chubb had discontinued her position, when in fact, Chubb was looking to fill DTU Analyst positions during the time that plaintiff was returning from maternity leave.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**Employment**

Chubb argues that all of plaintiff's claims against it should fail since Chubb was not plaintiff's employer, jointly or otherwise. Rather, Chubb contends that plaintiff was solely the employee of Kelly Services, a staffing agency with numerous corporate clients, including Chubb.

The default test of employment is based on principles of traditional agency law. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-28 (1992). Thus, the court must look to criteria for identifying the common law master-servant relationship. See id.

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative.

Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (internal citation omitted).

In the instant case, aside from the provision of benefits, which was managed by Kelly Services, every other Restatement of Agency factor weighs strongly in favor of finding that plaintiff was an employee of Chubb. It is not a close call. Chubb had total autonomy to control the manner and means by which plaintiff's work product was accomplished. Plaintiff's work for Chubb was her

4

only work; she had no other "clients." Plaintiff's work did not require unique or specialized skill. Plaintiff worked at Chubb's offices on Chubb equipment. The employment duration was indefinite, and Chubb had authority to terminate it, which it did.[1] Chubb had the right to determine and assign projects. Plaintiff lacked discretion to determine the timing and length of her workday. The method of payment was a periodic, regular wage amount, not by the job or by flat fee. Plaintiff had no role in hiring or paying assistants to help her with the job. Finally, Chubb hired plaintiff to participate in its business enterprise, and the Internal Revenue Code guidelines for determining employee status for tax purposes mirror traditional agency law, so presumably Chubb treated plaintiff as an employee for tax purposes.

In addition, plaintiff asserts that she began work with Chubb after she was hired by Chubb's employee, Rankin. Training was provided to plaintiff by Chubb and its employees. Plaintiff worked on a Chubb computer, using Chubb's instant messaging service and a Chubb email address: jessicajimenez@chubb.com. Chubb not only determined plaintiff's work hours, it also determined her rate of pay. In June 2015, Chubb denied plaintiff any raise. The prescribed language used to inform employees such as plaintiff of a pay decision explicitly acknowledges Chubb's discretion:

Phone Call Verbiage:

Congratulations, you have earned a .XX raise effective 6/7/15. To determine eligibility for a raise and raise amount Chubb reviews each person's productivity and attendance as well as other variables

---

[1] Rankin testified at deposition that she, along with her junior supervisors at Chubb, would decide whether to terminate a DTU Analyst's assignment.

including but not limited to teamwork, willingness to learn new tasks and work product quality. Thank you for your hard work.

Defendant submits that, for purposes of plaintiff's discrimination claims, the court should employ the "economic realities" test established by the Second Circuit to analyze FLSA claims against potential "employers," but that test is more liberal than the one utilized under traditional agency law principles. See Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 141 (2d Cir. 2008).

> In instances where Congress uses terms—such as employer and employment—"that have accumulated settled meaning under ... the common law," courts generally infer, unless the statute indicates otherwise, that "Congress means to incorporate the established meaning of these terms," *e.g.*, "the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (internal quotation marks omitted). The Supreme Court has observed, however, that the "striking breadth" of the FLSA's definition of "employ" "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles," *id.* at 326, 112 S.Ct. 1344, in order to effectuate the remedial purposes of the act, *see, e.g., United States v. Rosenwasser,* 323 U.S. 360, 363, 65 S.Ct. 295, 89 L.Ed. 301 (1945). *See also Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) ( "This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category.") (internal quotation marks omitted); *accord Frankel v. Bally, Inc.,* 987 F.2d 86, 89 (2d Cir.1993) (noting courts' recognition of "the expansive nature of the FLSA's definitional scope" as beyond the common law agency test in light of "the remedial purpose underlying the legislation").

Barfield, 537 F.3d at 141. The FLSA's economic realities test also results in a finding that plaintiff was an employee of Chubb. For example, as part of that test, the Second Circuit has identified "formal control factors" including whether the

alleged employer (1) had the power to hire and fire the employees (Chubb did), (2) supervised and controlled employee work schedules or conditions of employment (Chubb did), (3) determined the rate and method of payment (Chubb did), and (4) maintained employment records (Chubb did). See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). That Kelly Services was primarily responsible for HR and employment recordkeeping does not tip the scale. Accordingly, the court finds that plaintiff was an employee of Chubb.

**Pregnancy Discrimination**

Chubb argues that plaintiff cannot show that her termination was the result of pregnancy discrimination. Chubb contends that plaintiff has failed to establish a prima facie case of discrimination and that she cannot refute Chubb's non-discriminatory reasons for its decision to terminate her, namely her poor performance.

A plaintiff may make out a prima facie case of discrimination by alleging (1) membership in a protected class, (2) qualification for the job, (3) adverse employment action, and (4) an inference of discrimination. See Gregory v. Daly, 243 F.3d 687, 695 (2d Cir. 2001). Defendant challenges the second and fourth elements.

> To show qualification sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff need not show perfect performance or even average performance. Instead, she need only make the minimal showing that she possesses the basic skills necessary for performance of the job.
>
> * * *
>
> In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or

7

promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified.

Id. at 696-97.

Here, an inference of discrimination is also easily established by the fact that defendant terminated plaintiff without warning during her maternity leave. Accordingly, plaintiff has established a prima facie case of discrimination pursuant to Title VII.

Next, defendant argues that plaintiff cannot demonstrate circumstances sufficient to permit a rational fact finder to infer pretext, that defendant's decision to terminate was based in part on discrimination. See Govori v. Goat Fifty, L.L.C., 519 Fed. Appx. 732, 734 (2d Cir. 2013).

Where an employer's intent is at issue, the trial court must be especially cautious about granting summary judgment. See Gallo v. Prudential Residential Services, Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). The court's role of issue-finding, not issue resolution, is more pronounced where an employer's intent must be resolved primarily through credibility determinations. Such is the province of the jury. "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Id.

Here, plaintiff's employment with Chubb was not terminated until she was about to return from maternity leave. Chubb never alerted plaintiff or Kelly Services of any intention of terminating plaintiff prior to her use of maternity

leave, and there is no conclusive evidence in the record that Chubb had elected to terminate plaintiff prior to her leave.

After taking leave, plaintiff was originally informed by email that Chubb had discontinued her position, yet Bailey testified that plaintiff's position was filled "to keep up with production goals and headcount, [so] that her position was filled while she was out." Nevertheless, Bailey's explanation was apparently never given to plaintiff. Moreover, Chubb had *not* discontinued plaintiff's position. At the same time plaintiff was returning from maternity leave, Chubb still had DTU positions posted as open and was attempting to fill those openings.

According to defendant, plaintiff had made errors in her work and had attendance problems, but plaintiff responds that her performance was satisfactory. Moreover, plaintiff submits that Chubb failed to follow its own established practice of providing additional training to address any errors; instead, it fired her without warning. Finally, plaintiff asserts that many of her pre-leave attendance issues were pregnancy-related. Drawing all inferences against Chubb, as the court must, whether plaintiff's pregnancy leave played an impermissible role in Chubb's decision to terminate her employment is a material factual issue genuinely in dispute. Accordingly, Chubb's motion for summary judgment on plaintiff's Title VII and CFEPA discrimination claims will be denied.

**FMLA Retaliation and Interference**

Defendant agrees that FMLA retaliation claims are interpreted in the same manner as Title VII pregnancy discrimination claims. As to plaintiff's FMLA interference claim, defendant merely argues that it should fail because she had no right to reinstatement, but a jury could find that plaintiff's taking of FMLA-

protected leave constituted a negative factor in the decision to terminate her. See Sista v. CDC Ixix North America, Inc., 445 F.3d 161, 175-76 (2d Cir. 2006). Accordingly, summary judgment will be denied on plaintiff's FMLA retaliation and interference claims.

Finally, plaintiff concedes that summary judgment should be granted on her state law retaliation claim. Accordingly, summary judgment will be granted in favor of defendant on Count Five.

It may be that Chubb would have terminated plaintiff's employment regardless of her use of pregnancy leave. Such may be a reasonable view of the evidence, but it is not the court's job to decide the issue. The evidence viewed in the light most favorable to plaintiff is sufficient to create a material factual dispute. Therefore, it must be resolved by the factfinder at trial.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [ECF No. 71] is GRANTED in part and DENIED in part. Summary judgment is granted in favor of Chubb on Count Five. Summary judgment is denied as to the balance of plaintiff's claims against Chubb.

Dated this 30th day of November, 2018, at Bridgeport, Connecticut.

      /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE